PHOENIX OF HARTFORD

*v.*

J. D. CONEY

5-5368                          459 S. W. 2d 558

Opinion delivered November 16, 1970

*Terral, Rawlings, Matthews & Purtle,* for appellant.

*Patten & Brown,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant was the insurance carrier of workmen's compensation insurance of T. L. English d/b/a Glover Equipment Company. English had a contract to build a service station in some sort of joint venture with one Jim Benton. Benton arranged a subcontract with appellee J. D. Coney for the concrete finishing work on the job. Benton had previously made similar arrangements with appellee to do similar work under contracts held by B. G. Coney Construction Company. On those jobs the prime contractor carried workmen's compensation insurance covering the employees of J. D. Coney. Appellee did not actually

know that English was the prime contractor on this job, rather than B. G. Coney Construction Company, until he asserted a claim that an injury to his employee Arvid C. Ellis was covered under B. G. Coney Construction Company's workmen's compensation insurance. The injury to Ellis occurred on or about October 27, 1967. Appellant paid the Ellis claim and sued appellee to recover the amount paid under the provisions of Ark. Stat. Ann. § 81-1306 (Repl. 1960). Appellee defended on the ground of estoppel. At the conclusion of the evidence offered by appellants before the circuit judge, sitting as trier of the facts upon waiver of jury trial, appellee moved to dismiss. The court granted the motion. This appeal comes from the resulting judgment.

Arkansas Statutes Annotated § 81-1306 provides that a prime contractor's insurance carrier which becomes liable for payment of compensation may recover the amount paid from an insured subcontractor. Yet we do not take the statute to mean that the carrier may not be barred from recovery by estoppel. We have held that an employer is estopped to deny that an injured subcontractor is entitled to recover workmen's compensation when there is a contract, supported by a consideration, obligating the contractor to furnish coverage on the subcontractor and his employees. *Stillman* v. *Jim Walter Corporation*, 236 Ark. 808, 368 S. W. 2d 270. In that opinion we pointed out that the weight of authority supports the application of the doctrine of estoppel against an employer and a carrier when an insurance premium for coverage has been paid on a particular person. We think this to be a sound rule and that it is properly to be considered in this case, as the trial judge apparently did. If the carrier was estopped by the receipt of a premium covering appellee's injured employee, then the facts admitted were not sufficient to overcome the defense of estoppel.

This brings us to appellant's primary argument, *i. e.,* that the granting of the motion for dismissal was error. The motion was equivalent to a motion for a

directed jury verdict, and we must consider its granting on the same basis we would review a judgment based upon such a verdict. This means that we must view all evidence in the light most favorable to appellant and draw all reasonable inferences in its favor. *Home Mutual Fire Insurance Company* v. *Cartmell*, 245 Ark. 45, 430 S. W. 2d 849. Even when we do, we find that the granting of appellee's motion was not reversible error.

Appellant's chief field auditor, Horace Taylor, testified substantially as follows:

It is customary that appellant make an audit of its insured employers to get payroll information from the person on whom the respective policies are issued. This is for the purpose of determining the correct premium to be charged the employer and is based on his payroll. Appellant made such an audit on English on August 7, 1968, covering the period from August 1, 1967, to August 1, 1968, but I did not make it. There was no indication in that audit that J. D. Coney was an uninsured subcontractor on whom premiums were collected, even though three other subcontractors on the job were listed in the audit worksheets. Upon making an audit, I am not concerned with whether the contractor is taking money from payments to subcontractors to cover workmen's compensation premiums. I have the record of payments to subcontractors and charge a premium sufficient to cover the employees of a subcontractor, if there is no evidence the subcontractor is insured. When the evidence was submitted by the prime contractor that two of the three subcontractors listed carried workmen's compensation insurance, the company only considered the remaining subcontractor in arriving at the final premium charge. It would have added a premium charge for appellee if his status had been readily discernible from the prime contractor's records. It is clear from the audit papers that no charge was made for the employees of appellee and appellant's records showed that English paid no

premium on account of appellee. The payroll information furnished by the prime contractor showed the uninsured subcontractors and the type work they did. The premium charged is based on a classified rate applicable to each $100 of payroll. The records reviewed by the auditor were English's cash journal, individual employee earning cards, State Employment Security Division quarterly reports and WCC reports. The cash journal normally shows payments made to subcontractors. My department has nothing to do with claims. That service is performed by another department.

William Stringfellow, Claims Supervisor of the Workmen's Compensation unit of appellant, also testified substantially as follows:

The first report of the injury was signed by English and filed November 21, 1967. Nothing on the form showed that the injured person was working for a subcontractor. Appellant found by its own investigation that English was the general contractor and Coney a subcontractor. I have nothing to do with auditing to determine the amount of a premium or whether a premium is charged.

Travis English testified that:

Appellant had access to all my records; it sent a man to audit my books to determine the premium charged; I challenged the premium charged on account of two subcontractors, and furnished evidence that they were insured, after which the premium was reduced. I did not remit to appellant an additional $270 held out of Coney's payment. I merely paid the amount finally billed. I am sure that payments to Coney were carried on his books somewhere. I don't keep the books myself and I would have to see where and how it was carried. I think I carried everything relating to this partner-

ship enterprise with Benton on the Glover Equipment Company books.

J. D. Coney testified that he thought he was covered and expected to pay someone the premium; that $274.80 was withheld from his contract price by English after completion of the job in November 1967.

We do not agree with appellee's argument that the carrier's rights are so dependent upon its insured's rights that the judgment must be affirmed under any circumstances. Apparently, his position is that English is estopped to deny his liability and that his estoppel bars his carrier. Even though the trial court's action was not based upon this theory, we would readily agree with appellee if appellant sought recovery under equitable doctrine of subrogation. See *U. S. F. & G. Co.* v. *Maryland Cas. Co.,* 186 Kan. 637, 352 P. 2d 70 (1960); *Little Rock St. Imp. Dist.* v. *Taylor,* 184 Ark. 92, 40 S. W. 2d 786; *Aetna Cas. & Surety Co.* v. *Taylor,* 177 Ark. 181, 5 S. W. 2d 929. Subrogation, being a creature of equity, will not be enforced where it will work an injustice to one having an equal equity. *Belleclair Planting Co.* v. *Hall,* 125 Ark. 203, 188 S. W. 574. The action was brought under Ark. Stat. Ann. § 81-1306 (Repl. 1960); however, as we read that section, the statutory right of the carrier to recover from the subcontractor is not dependent upon the right of the prime contractor. It depends only upon payment of the claim by the carrier, whose claim for recovery does not affect its liability to the injured employee.

Where the insured employer's liability is based upon estoppel, or other equitable considerations, rather than the workmen's compensation laws, the estoppel will not automatically apply to an insurance carrier whose liability is to be determined by the workmen's compensation statute. See *Hano* v. *Kinchen,* 122 So. 2d 889 (La. Ct. App. 1960); *Hall* v. *Spurlock,* 310 S. W. 2d 259 (Ky. Ct. App. 1957), both cited in *Stillman.* Yet this does mean that appellant was not estopped to recover

from Coney.

The record reveals that the employer's first report of the injury made on the usual form showed the following information with reference to the accident:

(10) Name of Foreman     J. D. Coney—Employer

While the date of appellant's investigation is not disclosed, the complaint in this case was verified by appellant's attorney on March 5, 1968. It is alleged therein that Coney was an uninsured subcontractor who was not a self-insurer. Thus, it is obvious that appellant knew these facts five months before the audit. If it knew this and had access to all the subcontractor's books, surely the amount of premium chargeable on account of Coney's employees could and should have been determined. It undoubtedly would have been paid by English, who simply paid the amount for which he was billed after the audit. Appellant should be charged with any information which reasonable diligence would have disclosed. See *Southern Underwriters* v. *Jones,* 125 S. W. 2d 393 (Tex. Civ. App. 1939).

While we cannot say that appellant received and retained premiums withheld from Coney's payment, it alone is to blame. The doctrine of estoppel should not be so narrow as to require the actual payment of the added premium under these circumstances.

We must, then, consider appellant's secondary point for reversal. After the circuit judge had indicated what his holding would be on the motion to dismiss, appellant moved for summary judgment because of appellee's failure to make timely response to certain requests for admissions and because the requests were not answered by appellee, but by his attorney, and because the answers were unverified. Failure to properly answer requests for admissions does not, in and of itself, authorize or require the entry of summary judgment in favor of the party requesting admissions. It only means that the

court may take the request to have been admitted, and grant summary judgment if no material issue of fact is left to be determined. *Brown* v. *Lewis,* 231 Ark. 976, 334 S. W. 2d 225; *Universal Life Ins. Co.* v. *Howlett,* 240 Ark. 458, 400 S. W. 2d 294; *B. & P., Inc.* v. *Norment,* 241 Ark. 1092, 411 S. W. 2d 506; *Delta Discount Company* v. *Fryer,* 244 Ark. 489, 426 S. W. 2d 788; *Young Adm'r* v. *Dodson,* 239 Ark. 143, 388 S. W. 2d 94.

The facts admitted are:

That J. D. Coney on October 27, 1967, was engaged in the contracting business.

That J. D. Coney had sufficient employees on October 27, 1967, to be subject to the Arkansas Workmen's Compensation Act.

That J. D. Coney on October 27, 1967, was not qualified as a self-insurer under the Arkansas Workmen's Compensation Act.

That on October 27, 1967, Arvid C. Ellis sustained an injury compensable under Arkansas Workmen's Compensation Act.

That under the provisions of Arkansas Statutes 81-1306, Arvid C. Ellis made claim for Workmen's Compensation benefits for such injuries under the Workmen's Compensation policy of T. L. English d/b/a Glover Equipment Company.

That Arvid C. Ellis has received and been paid in his behalf Workmen's Compensation Benefits of $1,400.00[1] for such injuries under the Workmen's Compensation Policy of T. L. English d/b/a Glover Equipment Company.

---

[1]This amount had been paid at the time the request was filed. Later the payments totaled $5,190.70 (Footnote ours.)

That at the time of such injury, T. L. English d/b/a Glover Equipment Company was a prime contractor on the job where Arvid C. Ellis was injured.

That Phoenix of Hartford Insurance Company has paid to Arvid C. Ellis or paid in his behalf Workmen's Compensation benefits of $1,400.00 for the injury he received on October 27, 1967.

Taking the requests to have been admitted, appellant still was not entitled to summary judgment.

The judgment is affirmed.